**WARREN TERZIAN LLP**
Thomas Warren (SBN 160921)
*tom.warren@warrenterzian.com*
Dan Terzian (SBN 283835)
*dan.terzian@warrenterzian.com*
Erick Kuylman (SBN 313202)
*erick.kuylman@warrenterzian.com*
222 N. Pacific Coast Highway, Suite 2000
Los Angeles, CA 90245
T: (213) 410-2620

*Counsel for Plaintiffs*
*Crystal Carpenter and Jordan Cason*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Crystal Carpenter,** an individual on behalf of herself, the public, and all persons similarly situated; and **Jordan Cason,** an individual on behalf of himself, the public, and all persons similarly situated;<br><br>   Plaintiffs,<br><br>  v.<br><br>**Opportunity Financial, LLC,** a limited liability company; and **John Does 1–10;**<br><br>   Defendants. | Case No.   2:21-cv-9875<br><br>**Class Action Complaint for:**<br>1. **Unfair Competition (California Financial Code);**<br>2. **Unfair Competition (Unconscionability);**<br>3. **Money Had and Received;**<br>4. **Declaratory Relief;**<br>5. **RICO Association-in-Fact Enterprise;**<br>6. **RICO Conspiracy; and**<br>7. **Fraudulent Concealment.**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I. Introduction.................................................................................3

II. Parties.......................................................................................4

III. Jurisdiction and Venue...............................................................6

IV. Facts .......................................................................................7

    A. The California Financial Code caps the interest rate on consumer loans under $10,000...................................................7

        1. The California Fair Access to Credit Act caps the interest rate at about 36% per year for loans of $2,500 to $9,999. .....................................................................7

        2. California law caps the interest rate at no more than 30% per year for loans under $2,500................................8

        3. Loans exceeding these limits are void. ..............................8

    B. Opportunity Financial devised a rent-a-bank scheme in an unsuccessful attempt to evade California law. ..........................9

        1. Opportunity Financial is the true lender because it holds the predominant economic interest and bears the risk of loss........................................................................10

        2. Opportunity Financial is the true lender because it handles all acquisition, all marketing, all underwriting, and all servicing. .............................................................11

        3. Opportunity Financial is the true lender because it bears all responsibilities under the loan contracts. ....................13

    C. Opportunity Financial's loan contracts are forms prepared by Opportunity Financial and forced on the borrowers................15

    D. The loans' arbitration clauses are void and unenforceable........15

    E. Ms. Carpenter and Mr. Cason's loans are both for 159.56% APR over an 11 month term.........................................................19

V. Public Interest Allegations.........................................................20

VI. Class Action Allegations ..........................................................21

VII. Causes of Action ...................................................................24

VIII. Prayer for Relief....................................................................36

WARREN
TERZIAN LLP

## I.   Introduction

1.     160% APR. That's the interest rate on Defendant Opportunity Financial's loans to millions of borrowers in California and in over 30 other states.

2.     The interest rate is high everywhere. And in California, it's also illegal. Here the max rate caps out at about 36%.

3.     Yet Opportunity Financial continues loaning money at 160% APR, both in states where it's legal and in states where it's not.

4.     Opportunity Financial's conduct in both sets of states is identical. It markets the same loan product, at the same 160% interest rate, under the same trademarked "OppLoans" name. It underwrites the loans. It originates the loans. It services the loans. It enforces the loans. It even claims the loans on its financial reports.

5.     The one difference? In states where 160% APR is legal, Opportunity Financial names itself as the lender in the loan contracts.

6.     But in states where it's illegal, Opportunity Financial names two entities in those contracts: Opportunity Financial as the loan servicer and Utah state-chartered FinWise Bank as the purported lender. Then, after the loans are signed, Opportunity Financial buys 95% of the loan from FinWise and goes about business as usual.

7.     This is a sham. Opportunity Financial is the true lender on these loans. It bears all risk of loss, and it holds the predominant economic interest. Not FinWise.

8.     Opportunity Financial can't use this rent-a-bank scheme to immunize itself from California law. Courts have repeatedly held that rent-a-bank schemes and similar rent-a-tribe schemes are illegal and can't circumvent state law. *E.g.*, *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, No. 15-cv-7522, 2016 WL 4820635, at *6 (C.D. Cal. Aug. 31, 2016); *People v. Miami Nation*

WARREN
TERZIAN LLP

*Enters.*, 2 Cal. 5th 222, 252–56 (2016). These schemes have even landed folks in federal prison on racketeering charges. *E.g.*, U.S. Department of Justice, Scott Tucker Sentenced To More Than 16 Years In Prison For Running $3.5 Billion Unlawful Internet Payday Lending Enterprise, https://www.justice.gov/usao-sdny/pr/scott-tucker-sentenced-more-16-years-prison-running-35-billion-unlawful-internet-payday (Jan. 5, 2018).

9.     For these reasons, California law applies to these loans and invalidates them.

10.     This conclusion's not controversial. Opportunity Financial has virtually conceded as much in a case over its loans in DC. There, the DC Attorney General sued Opportunity Financial over the same rent-a-bank scheme. That lawsuit ended with Opportunity Financial agreeing to:

- pay $1.75 million;
- forgive $640,000 in past due interest; and
- not offer, provide, advertise, or service any loans over the maximum DC interest rate of 24% APR.

11.     This action seeks to hold Opportunity Financial accountable for its racketeering and illegal loans in California. It seeks damages and restitution. It also seeks a judicial determination that Opportunity Financial is the true lender on the loans, that California law applies to these loans, and that the loan contracts and arbitration clauses are void and unenforceable.

## II.   PARTIES

12.     Plaintiff Crystal Carpenter is a natural person domiciled in Santa Barbara County, California. This is true as of both today's date and the dates when Ms. Carpenter entered her loan contracts with Opportunity Financial.

13.     Plaintiff Jordan Cason is a natural person domiciled in San Joaquin County, California. This is true as of both today's date and the dates when Mr. Cason entered his loan contracts with Opportunity Financial.

14.     Defendant Opportunity Financial, LLC is a limited liability company. Its principal place of business is in Chicago, Illinois.

15.     Opportunity Financial's members are: DAV 513 Revocable Trust, JSK Management Holdings, LLC, LTHS Capital Group LP, MCS 2017 Trust FBO Tracy Ward, MCS 2017 Trust FBO Todd Schwartz, Ward Capital Group LP, OppFi Management Holdings, LLC, ACM OppLoans Warrants VII LLC, Bruce Hammersley, Ray Chay, Jessica LaForte, Inoh Choe, Jeremiah Kaye, and CJ Newton.

16.     Opportunity Financial's natural person members are all domiciled in Illinois.

17.     Opportunity Financial's trust members comprise persons who are all domiciled in Illinois.

18.     Opportunity Financial's limited liability company members comprise natural-person members who are all domiciled in either Illinois or Texas.

19.     Opportunity Financial's limited partnership member comprises natural-person partners who are all domiciled in Illinois.

20.     No Opportunity Financial owner or member is a citizen of California.

21.     No Opportunity Financial owner or member has its principal place of business in the State of California.

22.     Defendants John Does 1–10 are unidentified parties who are owned or controlled by Opportunity Financial and who participated in the enterprise with Opportunity Financial. They funded, serviced, collected, or profited from the illegal loans. Does 1–10 are not citizens of California and are citizens of Illinois or Texas.

WARREN
TERZIAN LLP

### III.   Jurisdiction and Venue

23.   This Court has subject matter jurisdiction over this action for three reasons. First, it has federal question jurisdiction over the RICO claims and supplemental jurisdiction over the state law claims.

24.   Second, the amount in controversy—the aggregate amount sought by the Class—exceeds $5 million, and at least one Plaintiff is diverse from at least one Defendant. Therefore, the Court has subject matter jurisdiction under the Class Action Fairness Act.

25.   Third, it has diversity jurisdiction over the individual claims because there is complete diversity and the amount in controversy is over $75,000. Ms. Carpenter and Mr. Cason are domiciled in and citizens of California. Opportunity Financial is not a citizen of California; it is a citizen of Illinois and Texas. As for the Class, it comprises persons who were California residents at the time of receiving the loan.

26.   This Court has specific personal jurisdiction over Opportunity Financial because it has intentionally availed itself of and purposefully directed its activities towards the State of California by doing business here.

27.   Opportunity Financial solicited and entered loans with Ms. Carpenter, Mr. Cason, and the Class, all of whom were California residents and citizens at the time of entering the loans. And Opportunity Financial knew they were California residents and citizens when they made the loans.

28.   Opportunity Financial spearheaded the rent-a-bank scheme and implemented that scheme in California. It knew the scheme would affect Californians. What's more, Opportunity Financial did all this while operating as a licensed California Finance Lender.

29.   Venue is proper in the Central District of California because a substantial part of the events giving rise to the claim occurred here. When

WARREN
TERZIAN LLP

Opportunity Financial entered the loan with Ms. Carpenter, she was a citizen of Santa Barbara County.

## IV. FACTS

### A. The California Financial Code caps the interest rate on consumer loans under $10,000.

30. The California Financial Code limits the interest that lenders may charge on loans under $10,000.

31. Opportunity Financial is a licensed California Finance Lender and has been since 2014. Its license number is 603K647.

32. Opportunity Financial is therefore subject to the California Financial Code and must comply with it.

#### 1. The California Fair Access to Credit Act caps the interest rate at about 36% per year for loans of $2,500 to $9,999.

33. The California Fair Access to Credit Act ("Act") went into effect on January 1, 2020.

34. In enacting the Act, the California Legislature stated:

> The lack of guidance from the Legislature on allowable interest rates for loans of $2,500 - $10,000 has led to a "wild west" where unscrupulous lenders are charging interest rates from 100% to more than 200% on these larger installment loans. Consumers are struggling under these egregious terms, and at least one out of three consumers default on these debts.

> These high default rates and unconscionable interest rates have caused turmoil in the regulatory environment ….

> As Chair and Member of the Assembly Banking Committee, we have worked over the past year to negotiate a compromise between consumer advocates and responsible lenders in California. The result of those negotiations is AB 539. The bill is supported a large coalition of community and faith-based organizations, cities and counties, and responsible lenders who recognize that 100% interest rates and high default rates are harming more than 100,000 California families each year and that we must act to protect our consumers.

Report of Sen. Judiciary Com., AB 539, July 9, 2019, http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200AB539.

35.     To curb these abusive lending practices, the Act limits the interest rates that finance lenders may charge on consumer loans of $2,500 to $9,999. Cal. Fin. Code § 22304.5. The maximum interest rate for these loans is 36%, plus the federal funds rate. *Id.*

36.     Since January 1, 2020, the federal funds rate has never exceeded 1.6%. Since April 2020, the federal funds rate hasn't exceeded .1%.

37.     Thus, the statutory maximum interest rate for all such loans issued since January 1, 2020, has been no greater than 37.6%.

### 2.     California law caps the interest rate at no more than 30% per year for loans under $2,500.

38.     The California Financial Code also limits the interest rate on loans under $2,500. The maximum rate on these loans is no more than 30% per year. Cal. Fin. Code § 22303.

### 3.     Loans exceeding these limits are void.

39.     If a lender willfully charges, contracts for, or receives more than the maximum interest rate, the loan contract is void. Cal. Fin. Code § 22750(a). So no person has any right to collect or receive any principal, charges, or recompense in connection with that transaction. *Id.* The same goes if the lender willfully violated the California Financial Code. *Id.* § 22750(b).

40.     If a lender charges, contracts for, or receives more than the maximum interest rate for a reason other than a willful act, the lender forfeits all interest and charges on the loan. Cal. Fin. Code § 22751. All the lender is allowed to collect is the loan's principal. *Id.*

41.     To prevent companies from circumventing the law by involving an out-of-state lender at some step in the lending process, California law provides that "[a]ny person who contracts for or negotiates in this state a loan to be

WARREN TERZIAN LLP

made outside the state for the purpose of evading or avoiding the provisions of this division is subject to the provisions of this division." Cal. Fin. Code § 22324.

42.   For these reasons, even if a court were to hold (incorrectly) that Opportunity Financial does not have the predominant economic interest in the loans and that FinWise is the true lender, Opportunity Financial itself would still violate California law by negotiating for and contracting the loans to be made out of state.

43.   Defendants willfully violated California law.

**B.    Opportunity Financial devised a rent-a-bank scheme in an unsuccessful attempt to evade California law.**

44.   In 2012, Opportunity Financial started its business as a storefront lender. The next year it moved its business online and focused on nonprime consumers.

45.   Opportunity Financial now issues loans in around 35 states.

46.   In four states, Opportunity Financial closes subprime loans (its OppLoans product) in its own name and does not engage in a rent-a-bank scheme. Those states do not have usury laws prohibiting those loans, so Opportunity Financial's conduct in those states is lawful.

47.   Opportunity Financial's loans to Californians are always offered at around 160% APR. The total principal ranges from $500 to $4,000. Typically the repayment term is around 11 months, but it can range from 9 to 18 months.

48.   Opportunity Financial has also expanded into the near-prime market and may have at least some lawful operations in that segment.

WARREN
TERZIAN LLP

**1.   Opportunity Financial is the true lender because it holds the predominant economic interest and bears the risk of loss.**

49.    To create a veneer of legitimacy, Opportunity Financial has implemented a rent-a-bank scheme. It crafts the loan contract as purportedly between one of three Utah state-chartered banks (generally FinWise Bank) and the California consumer. These banks are wholly located in the State of Utah and have no branches outside that state.

50.    But what Opportunity Financial puts on paper does not change the reality: it is the true lender on these loans. Opportunity Financial holds the predominant economic interest. It bears the risk of loss and poor performance. And it funds the expenses for the provision of the loans.

51.    Shortly after every loan is entered, Opportunity Financial buys 95% of each loan from FinWise Bank. It makes these purchases daily.

52.    Opportunity Financial takes the risk of poorly performing loans. Its accounting statements include provisions for losses on the loans, costs related to its funding of the purchases of the loans, and the costs of loan origination.

53.    By comparison, FinWise's risk and reward on these loans is virtually nil. Its fees and expenses are capped under its agreements with Opportunity Financial. And Opportunity Financial's assumption of the risk and purchase of the loans is guaranteed through their agreements with FinWise, including a requirement that Opportunity Financial hold cash in blocked accounts at FinWise.

54.    Opportunity Financial provides FinWise with three more layers of security to guarantee Opportunity Financial's purchase of the loans: a cash collateral account, an alternate collateral account (both with defined minimum balances), and letters of credit for the benefit of FinWise.

55.    Driving home the point that Opportunity Financial is the true lender on these loans is its own financial statements. These statements identify

WARREN
TERZIAN LLP

Opportunity Financial's "Key Performance Metrics." The lead metric is "Total Net Originations." That number "includes both originations by bank partners on the OppFi platform, as well as direct originations by OppFi." Other key metrics are the charge-off percentages, auto-approval rates, and marketing costs—all things handled by Opportunity Financial.

### 2. Opportunity Financial is the true lender because it handles all acquisition, all marketing, all underwriting, and all servicing.

56. Opportunity Financial handles all acquisition, all marketing, all underwriting, and all servicing of the loans. For this reason as well, Opportunity Financial is the true lender.

57. Opportunity Financial pays for all the marketing of the loans. This costs the company tens of millions of dollars each year.

58. Opportunity Financial uses several methods to find potential borrowers. It sends prescreened direct mail. It employs email campaigns directed at borrowers. It uses search engine optimization, online lead generators, social media, and multimedia.

59. Opportunity Financial also targets consumers through other digital channels, as well as through its website, opploans.com.

60. Opportunity Financial markets the loans as "OppLoans." This is a trademarked product of Opportunity Financial's. They are not named "FinWiseLoans."

61. Opportunity Financial creates the marketing materials and product offerings to promote the loans. Both the program guidelines used to operate the OppLoans program and the advertising materials that Opportunity Financial uses to promote OppLoans are Opportunity Financial's intellectual property.

62. Opportunity Financial is also the servicer for the loans. It has the exclusive license to use customer information and the right to contact and communicate with borrowers about potential loans.

WARREN
TERZIAN LLP

63.    Consumers who wish to obtain a loan must do so through Opportunity Financial's website, opploans.com. There is no other way to obtain the loans.

64.    Consumers cannot obtain a loan through FinWise.

65.    FinWise's website contains a page about loans offered by FinWise. That page markets FinWise's own lending products, none of which are the OppLoans product or anything remotely similar.

66.    That page also contains a notice trumpeting products by FinWise's partners: "If you have received offers from our other Partners, please click the button below. Our Partners include American First Finance, Liberty Lending, Lendingpoint, OppLoans, Mulligan Funding, Behalf and rise." FinWise itself recognizes these are offers *from* OppLoans, not from FinWise.

67.    Clicking that button then leads to a page showing 11 "partners"— i.e., the loans' true lenders. One of these is Opportunity Financial. The FinWise website contains a three sentence description of Opportunity Financial's loans, and directs visitors to Opportunity Financial's website to "Learn More."

68.    Opportunity Financial's duties include finding and identifying eligible borrowers, processing the loan applications, maintaining the originals or copies of all loan documents, performing underwriting on the loan, establishing the account into which the proceeds from the loans are deposited, servicing the loans, collecting on the loans, and instituting collections and legal proceedings against borrowers who have defaulted.

69.    Opportunity Financial executes all notices to consumers about the legal status of the loans and has the authority to grant loan modifications to borrowers.

70.    Opportunity Financial screens potential borrowers based on its own proprietary lending criteria. Nearly all the lending decisions for the loans are made by Opportunity Financial and its proprietary credit-decision-making

WARREN
TERZIAN LLP

1 algorithms. In total, the application and approval process takes around five
2 minutes and is handled solely by Opportunity Financial.

3    71.    After a loan is approved, Opportunity Financial closely monitors
4 the borrowers' bank account balances. They are looking for cash. If they see a
5 relatively large balance, Opportunity Financial emails these borrowers and tells
6 them they can get more money in their pocket if they refinance. That email then
7 directs them to Opportunity Financial's website to complete the refinance
8 application, which will ultimately refinance them into a new loan at the same
9 160% interest rate.

10    72.    Opportunity Financial sends these unsolicited refinance offers for
11 one purpose: to get Opportunity Financial more money, at the cost of forcing
12 its borrowers into deeper and deeper debt spirals. Opportunity Financial has
13 found their marks, and it will bleed them dry.

14    73.    Opportunity Financial spends millions of dollars each year to
15 support its national provision of the OppLoans product. This money is spent
16 on advertisements, loan origination, collection, and technology costs.

17
18
          **3.    Opportunity Financial is the true lender because it bears all
          responsibilities under the loan contracts.**

19    74.    Opportunity Financial bears all responsibilities under the loan
20 contracts with the borrowers. FinWise bears none. For this reason too,
21 Opportunity Financial is the loans' true lender.

22    75.    The loans don't provide any address or contact information for
23 FinWise. Instead, they provide Opportunity Financial's address, phone number,
24 and email address. And the loans direct that all communications go through
25 Opportunity Financial.

26    76.    The loans mention Opportunity Financial at least fifteen times.
27 These references include:

28       •    a statement identifying Opportunity Financial and its address
              and phone number as the address for FinWise;

WARREN
TERZIAN LLP

- "If the amount actually owing on the Maturity Date is more than the amount shown on the above Payment Schedule, then: (i) by contacting our servicer Opportunity Financial, LLC ('OppLoans') at (855) 990-9500 or info@opploans.com";

- "If you wish to change your payment method, you may contact us by communicating with Opploans at (855) 990-9500 or info@opploans.com";

- "You understand and acknowledge that you may terminate this authorization by notifying us at (855) 990-9500 or info@opploans.com or by mail to OppLoans, ATTN: Compliance Department, One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "You may elect to receive advance notice of the date and amount of each regularly recurring Automated Payment that varies from the scheduled payments if you notify us by communicating with OppLoans at (855) 990-9500, or at One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "If you believe we have initiated a payment in a manner not contemplated by this authorization, then please contact OppLoans at (855) 990-9500, or One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "You understand and acknowledge that you may terminate our authority to create and submit Remotely Created Checks by notifying us at (855) 990-9500 or info@opploans.com or by mail to OppLoans, ATTN: Compliance Department, One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "You may elect to receive advance notice of the date and amount of each regularly recurring Remotely Created Check that varies from the scheduled payments if you notify us by communicating with OppLoans at (855) 990-9500, or at One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "If you believe we have presented a Remotely Created Check in a manner not contemplated by this authorization, then please contact OppLoans at (855) 990-9500, or One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "You may cancel the note by contacting OppLoans at (855) 990-9500";

- "For questions, please contact: (855) 990-9500"; and

WARREN
TERZIAN LLP

- "We may assign this Note at any time without your permission. Our transfer may be made by causing a registration of transfer in the record of ownership as described below, without providing you with any other notice …. Ownership of this Note (and rights hereunder, including with respect to principal and interest) shall be registered in a record of ownership maintained by an entity specifically designated for such purposes. You hereby irrevocably appoint Opportunity Financial, LLC as your agent acting solely for the purpose of maintaining such record of ownership."

**C. Opportunity Financial's loan contracts are forms prepared by Opportunity Financial and forced on the borrowers.**

77.   Opportunity Financial uses identical loan contracts (other than the principal amounts) for all loans to the Class.

78.   The loan contracts are forms prepared by Opportunity Financial and are contracts of adhesion. The terms are forced on the borrowers, and the borrowers have no ability to negotiate them.

79.   The loans, written in size 4.5 font, are practically illegible.

80.   The only persons who signs the loan contracts are the borrowers.

81.   Opportunity Financial does not sign them.

82.   FinWise does not sign them.

83.   Nobody signs the loans on behalf of Opportunity Financial, FinWise, or any other rented bank.

84.   After the loan contracts are purportedly consummated, the borrowers receive a copy of the loan contract. That contract is signed only by the borrower—nobody else.

**D. The loans' arbitration clauses are void and unenforceable.**

85.   Opportunity Financial's loans contain arbitration clauses. Within that clause is also a class action and jury trial waiver.

86.   However, any issues related "validity, enforceability, coverage, or scope" of that clause "shall be determined by a court."

WARREN
TERZIAN LLP

87.    Arbitration clauses are invalid if the contract is void under generally applicable state law. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 343 (2011) ("This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.").

88.    The arbitration clause here is void for six reasons.

89.    First, the arbitration clause is void under Consumer Financial Code § 22750. Opportunity Financial willfully charged, contracted for, or received interest greater than permitted by Division 9 of the California Financial Code (including Sections 2303 and 22304.5). It intentionally charged, contracted for, and received interest rates greater than what California law allowed. It knew that California caps the interest rate at no more than roughly 36% APR, and still it loaned money at 160%.

90.    Opportunity Financial also willfully violated Division 9 in the making or collection of loans. It knew that courts have repeatedly held that rent-a-bank schemes and similar rent-a-tribe schemes are illegal or otherwise ineffective to circumvent state law. It also knew the extreme regulatory risk of pursuing this scheme. Opportunity Financial could not reasonably believe that the loans complied with California law.

91.    Second, the arbitration clause is invalid and unenforceable because it is unconscionable. The arbitration clause is procedurally unconscionable. They are Opportunity Financial's form contracts offered on a take-it-or-leave-it basis to financially desperate borrowers. They are contracts of adhesion, and Opportunity Financial had all bargaining power.

92.    The arbitration clause is also substantively unconscionable. It requires applying Utah law to the dispute. Utah law does not have any caps on

WARREN
TERZIAN LLP

interest rate. So by requiring that the arbitrator apply Utah law, the arbitration clause waives all the borrowers' claims and deprives them of any remedy for Opportunity Financial's misconduct. An arbitrator could not apply California law to determine whether the contract is unconscionable and could not even limit the application of the choice of law clause to the extent necessary to prevent substantial injustice, as California requires. Thus, the clause is overly harsh, unduly oppressive, and so one sided as to shock the conscious.

93. Third, the arbitration clause also requires arbitrating claims as a private attorney general or for public injunctive relief. That requirement is void and unenforceable under California law.

94. Fourth, the arbitration clause provides that "No arbitration award under this Agreement will affect any dispute involving any other party. No arbitration award under another party's agreement will affect any arbitration under this Agreement." This is unlawful and void because it violates fundamental principles of res judicata, collateral estoppel, and issue preclusion.

95. Imagine if a borrower gets an order declaring the loans unlawful or a violation of RICO. That order becomes final. Fundamental offensive issue preclusion would treat that point as established against Opportunity Financial in all cases. If other borrowers sued, the only question remaining would be damages because liability is established.

96. The arbitration clause effectively bars the arbitrator from applying any state or federal law on res judicata, collateral estoppel, or issue preclusion and bars the arbitrator from affording relief that would be required in a court of law.

97. Fifth, the entire loan contract is void because it is unconscionable.

98. Sixth, the entire loan contract is void due to fraud and fraudulent concealment.

WARREN
TERZIAN LLP

99.   The loan contracts irrevocably appointed Opportunity Financial as the borrowers' agent. Opportunity Financial therefore owed fiduciary duties to the borrowers.

100.   Opportunity Financial intentionally failed to disclose that California law caps the interest rates at no more than 36% APR plus the federal funds rate. Opportunity Financial also intentionally failed to disclose that it buys 95% of the loans shortly after they are issued.

101.   Opportunity Financial disclosed certain alleged factual statements—i.e., that it was purportedly just the servicer on the loan. It also represented that the loans were enforceable. These representations were materially false. Opportunity Financial made the misrepresentations knowing they were false or alternatively made them recklessly and without regard for their truth.

102.   Even if not false, the representations were deceptive because Opportunity Financial failed to disclose that it buys 95% of the loans shortly after they are issued, along with all other facts related to Opportunity Financial being the true lender.

103.   The borrowers did not know of the concealed facts.

104.   Opportunity Financial intended to deceive the borrowers by concealing the facts.

105.   Had the information been disclosed, the borrowers reasonably would have behaved differently. The borrowers were harmed, and Opportunity Financial's concealment was a substantial factor in causing their harm.

106.   With the arbitration clause invalidated, the jury trial and class action waivers are also invalidated and unenforceable under California law.

WARREN TERZIAN LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.     Ms. Carpenter and Mr. Cason's loans are both for 159.56% APR over an 11 month term.**

107.  Ms. Carpenter took out a loan from Opportunity Financial in mid-early 2021 for an unlawful interest rate at more than double California's statutory maximum.

108.  She made payments on the loan.

109.  In August 2021, Opportunity Financial emailed her about refinancing the loan to get more money. The email contained a link. Ms. Carpenter clicked the link, and it took her to Opportunity Financial's website. Ms. Carpenter then refinanced her loan through Opportunity Financial's website. She entered a new loan contract for $2,200, with a 159.56% APR and an 11 month term. Attached as Exhibit A is a true and correct copy of that loan contract, with certain personal information redacted.

110.  Ms. Carpenter has made payments on this August 2021 loan.

111.  Mr. Cason has taken out multiple loans with Opportunity Financial since January 2020.

112.  He took out his original loan by visiting Opportunity Financial's website. That loan was for an unlawful interest rate at more than double California's statutory maximum.

113.  He made payments on that loan. Then about a month-and-a-half later, Opportunity Financial emailed him that he was eligible to refinance and directed Mr. Cason to his account page on Opportunity Financial's website.

114.  Opportunity Financial offered Mr. Cason multiple refinances. Each time, he was directed to Opportunity Financial's website. He went to the website, and Opportunity Financial ultimately proposed to loan him more money and refinance his old loan. He accepted and refinanced, entering a new loan contract with Opportunity Financial.

**WARREN TERZIAN LLP**

115.  The last time this happened was in September 2021. It culminated in Mr. Cason entering a new loan contract for $2,900, with a 159.6% APR and an 11 month term. Attached as Exhibit B is a true and correct copy of that loan contract, with certain personal information redacted.

116.  Mr. Cason has made payments on this September 2021 loan.

117.  Ms. Carpenter and Mr. Cason's loan contracts are pre-printed form contracts. Their terms were dictated by Opportunity Financial, and they had no opportunity for negotiation or modification.

118.  At no point has Ms. Carpenter or Mr. Cason ever communicated with any person employed by FinWise bank. All their communications were with Opportunity Financial.

## V.   Public Interest Allegations

119.  One of the remedies sought by Ms. Carpenter and Mr. Cason is a public injunction for the benefit of the general public of the State of California. Public injunctive relief is relief that by and large benefits the general public. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017). Any benefits to the plaintiff are either incidental or come from her being a member of the general public. *Id.*

120.  Injunctive relief under the UCL is relief that has "the primary purpose and effect" of prohibiting unlawful acts that threaten future injury to the general public. *Id.*

121.  Public injunctive relief can be sought by any person who has lost money as a result of the unfair business practice. *Id.* at 959.

122.  Obtaining public injunctive relief does not require class certification. *Id.* at 960.

123.  Opportunity Financial's business practices threaten future injury to the general public of the State of California. Opportunity Financial focuses and directs its marketing activities at low-income California residents who are in

WARREN
TERZIAN LLP

desperate need of cash and who are vulnerable to exploitation. Ultrahigh interest rate consumer loans—like the loans offered by Opportunity Financial—trap many low-income consumers in cycles of debt and bankruptcy. In fact, persons who take out these loans are twice as likely to file for bankruptcy than others. Paige Marta Skiba & Jeremy Tobacman, Do Payday Loans Cause Bankruptcy?, 62 J. of Law & Econ. 485 (2019). These consequences, in turn, increase the borrowers' reliance on taxpayer-funded government services. The California legislature enacted the Financial Code's interest-rates limits to prevent this exploitation.

124.  Opportunity Financial's business practices are injurious to the general public. Public injunctive relief is therefore warranted.

## VI.  Class Action Allegations

125.  Ms. Carpenter and Mr. Cason also bring this lawsuit as a class action under Federal Rule of Civil Procedure 23. The putative class ("Class") is defined as follows:

> All individuals in California who obtained a loan from, through, by way of, or with the assistance of Opportunity Financial:
>
> > (1) on or after January 1, 2020, with an original principal loan amount of between $2,500 and $9,999, inclusive, and an APR of 37.7% or greater;
> >
> > (2) on or after December 23, 2017, with an original principal loan amount of between $1 and $349, inclusive, and an APR of 30.1% or greater;
> >
> > (3) on or after December 23, 2017, with an original principal loan amount of between $350 and $499, inclusive, and an APR of 27.9% or greater;
> >
> > (4) on or after December 23, 2017, with an original principal loan amount of between $500 and $999, inclusive, and an APR of 26.8% or greater; *or*

WARREN
TERZIAN LLP

(5) on or after December 23, 2017, with an original principal loan amount of between $1,000 and $2,499, and an APR of 24.8% or greater.

Excluded from the Class are all employees of Opportunity Financial and any judicial officer assigned to this case.

126. The Class has one sub-class: the RICO Sub-Class.

127. The RICO Sub-Class is defined as follows:

All individuals in California who obtained a loan from, through, by way of, or with the assistance of Opportunity Financial:

(1) on or after January 1, 2020, with an original principal loan amount of between $2,500 and $9,999, inclusive, and an APR of 75.4% or greater;

(2) on or after December 23, 2017, with an original principal loan amount of between $1 and $349, inclusive, and an APR of 60.2% or greater;

(3) on or after December 23, 2017, with an original principal loan amount of between $350 and $499, inclusive, and an APR of 55.8% or greater;

(4) on or after December 23, 2017, with an original principal loan amount of between $500 and $999, inclusive, and an APR of 53.6% or greater; *or*

(5) on or after December 23, 2017, with an original principal loan amount of between $1,000 and $2,499, and an APR of 49.6% or greater.

Excluded from the RICO Sub-Class are all employees of Opportunity Financial and any judicial officer assigned to this case.

128. *Numerosity*. The size of the Class and RICO Sub-Class each comprise at least thousands of persons. The size of the Class and RICO Sub-Class grows daily.

129. *Ascertainability*. The members of the Class and RICO Sub-Class can be ascertained from Opportunity Financial's business records.

130.  *Common Questions of Fact or Law*. The lawsuit is suitable for class treatment because questions of law and fact have common answers that are the same for the Class and the RICO Sub-Class, and those questions predominate over questions affecting only individual members. These common questions of law and fact include:

- Whether Opportunity Financial is the true lender on the loans;

- Whether the loans are governed by California law;

- Whether Opportunity Financial willfully charged an interest rate in excess of what's allowed under California law;

- Whether Opportunity Financial's noncompliance with California law is willful;

- Whether the arbitration agreement is void;

- Whether the loans are void; and

- The appropriate remedies for Opportunity Financial's misconduct.

131.  *Typicality and Adequacy*. Ms. Carpenter and Mr. Cason's claims are typical of the claims of the members of the Class and the RICO Sub-Class. The evidence and the legal theories about Opportunity Financial's alleged wrongful conduct are substantially the same for Ms. Carpenter, Mr. Cason, and all members of the Class and the RICO Sub-Class. Ms. Carpenter and Mr. Cason will fairly and adequately represent and protect the interests of the Class and the RICO Sub-Class and have no interests adverse to them.

132.  *Superiority*. This action is superior to other available methods for fairly and efficiently adjudicating the issues. Class certification will not present any significant management difficulties. Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments. The expense and burden of individual litigation would make it very difficult or

WARREN
TERZIAN LLP

1  impossible for individual Class members to redress the wrongs done to them

2  without a class action.

3      133.  *Conduct on Grounds that Apply  to the Class*. Defendants have

4  acted or refused to act on grounds that apply generally to the Class and the

5  RICO Sub-Class, so that final injunctive relief or corresponding declaratory

6  relief is appropriate respecting the Class and RICO Sub-Class as a whole.

7  **VII.  Causes of Action**

8      134.  Ms. Carpenter and Mr. Cason re-allege and incorporate by

9  reference all the preceding paragraphs and allegations in each of the following

10  causes of action.

11  <center>**First Cause of Action**</center>

12  <center>**for Unfair Competition (Bus. & Prof. Code § 17200) — Violation of California Financial Code by Carpenter and Cason, on behalf of themselves, all persons similarly situated, and the general public, against Defendants**</center>

13

14      135.  The Unfair Competition Law, Business and Professions Code

15  sections 17200 *et seq.* ("UCL"), defines unfair competition to include any

16  "unlawful" or "unfair" business act or practice. Cal. Bus. & Prof. Code §

17  17200.

18      136.  Ms. Carpenter, Mr. Cason, and the Class' loan transactions with

19  Defendants are "consumer loans" under California Financial Code section

20  22203.

21      137.  The Class' loan transactions with Opportunity Financial involve

22  loans that: (1) were made on or after January 1, 2020, with an original

23  principal loan amount of between $2,500 and $9,999, inclusive, and an interest

24  rate of 37.7% or greater; (2) were made on or after December 23, 2017, with

25  an original principal loan amount of between $1 and $349, inclusive, and an

26  APR of 30.1% or greater; (3) were made on or after December 23, 2017, with

27  an original principal loan amount of between $350 and $499, inclusive, and an

28  APR of 27.9% or greater; (4) were made on or after December 23, 2017, with

WARREN
TERZIAN LLP

an original principal loan amount of between $500 and $999, inclusive, and an APR of 26.8% or greater; *or* (5) were made on or after December 23, 2017, with an original principal loan amount of between $1,000 and $2,499, and an APR of 24.8% or greater.

138.  The first category of loans violates California Financial Code sections 22304.5 and 22306.

139.  The remaining categories of loans violate California Financial Code sections 22303 and 22306.

140.  By issuing loans to Ms. Carpenter, Mr. Cason, and the Class members that bear interest in excess of the maximum rate authorized by the California Financial Code, Defendants have engaged in a business practice that is "unlawful" under the UCL. *De La Torre v CashCall, Inc.*, 5 Cal. 5th 966, 976–81 (2018) (the UCL "supplies a cause of action to police" conduct that is declared unlawful by the California Financial Code).

141.  In connection with Ms. Carpenter, Mr. Cason, and the Class members' loan transactions, Defendants willfully contracted for, charged, and received interest in excess of the maximum rate permitted by California Financial Code sections 22303 and 22304.5.

142.  Apart from the rent-a-bank scheme, Opportunity Financial is separately liable because it violated California Financial Code section 22324. "Any person who contracts for or negotiates in this state a loan to be made outside the state for the purpose of evading or avoiding the provisions of this division is subject to the provisions of this division." Cal. Fin. Code § 22324. Opportunity Financial is a licensed California Finance Lender, and it contracted for a loan to be purportedly made outside California for the purpose of evading California interest rate caps.

143.  On top of being unlawful, Defendants' business practices are "unfair" under the UCL. Defendants' acts and omissions violate obligations

imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

144. Ms. Carpenter, Mr. Cason, and the Class members have suffered an injury in fact and lost money or property as a result of Defendants' business practices. They have paid illegal interest rates on unenforceable and void loans. They have also repaid principal that, under the California Financial Code, Opportunity Financial was not entitled to because of its willful misconduct.

145. Pursuant to California Business and Professions Code section 17203, Ms. Carpenter and Mr. Cason seek an order for the benefit of the general public of the State of California, (i) enjoining Defendants from making loans to consumers in the State of California that violate Financial Code sections 22303, 22304.5, 22305, and/or 22306; (ii) declaring the loan contracts void; (iii) requiring Defendants to give individualized notice to all Class members of theirs rights under California law, including the previously mentioned California Financial Code sections; (iv) requiring Defendants to provide individualized notice to each such consumer of the procedures available for enforcing the consumer's rights under applicable California laws; and (v) establishing an effective monitoring mechanism to ensure Defendants' continued compliance with the terms of the injunction.

146. Pursuant to California Business and Professions Code section 17203 and California Financial Code section 22750, Ms. Carpenter, Mr. Cason, and the Class members are entitled to restitution of all amounts paid to Defendants pursuant to the loan contracts at issue. Alternatively, in the event of a judicial determination that Defendants' violations of California Financial Code sections 22303 and 22304.5 were not willful, then pursuant to California Business and Professions Code section 17203 and California Financial Code

section 22751, Ms. Carpenter, Mr. Cason, and Class members are entitled to restitution of all interest charged on the loans.

### Second Cause of Action
**for Unfair Competition (Bus. & Prof. Code § 17200) — Doctrine of Unconscionability by Carpenter and Cason, on behalf of themselves, all persons similarly situated, and the general public, against Defendants**

147.   A loan contract that includes an interest rate term so high that it is "unreasonably … harsh," "unduly oppressive," or "so one-sided as to shock the conscience" is deemed unconscionable. *See De La Torre*, 5 Cal. 5th at 972. A contract or its terms is unconscionable if it is both procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

148.   The loan contracts at issue are procedurally unconscionable for at least the following reasons: (i) Opportunity Financial maintains unequal bargaining power as compared to consumers who receive such loans; (ii) Opportunity Financial has greater economic power, knowledge, experience, and resources than the consumers who receive such loans; (iii) Opportunity Financial targets its advertising to consumers experiencing serious financial challenges, many of whom lack meaningful credit alternatives; (iv) Opportunity Financial emphasizes the speed of its loan process, thus providing inadequate time for investigation or reflection on the part of consumers; (v) borrowers do not receive an adequate or independent explanation of the terms of the loan agreement; (vi) the loan contracts are form documents prepared exclusively by Opportunity Financial and presented to borrowers on a take-it-or-leave-it basis, with no opportunity for negotiation; and (vii) the loan contracts constitute consumer contracts of adhesion.

149.   The loan contracts at issue are substantively unconscionable because they impose a cost on the borrower that is overly harsh and disproportionate to the price of credit and related costs. Among other things,

WARREN TERZIAN LLP

1  Defendants charge interest rates that are more than four times the statutory

2  maximum established by California Financial Code sections 22303 and

3  22304.5. The terms of the loans have overly harsh consequences, resulting in

4  total interest payments that almost equal the principal amount of the loan.

5  There is also no legitimate basis for charging such exorbitant interest rates.

6      150.  The loan contracts at issue are "unlawful" under the UCL because

7  the loans violate California Civil Code section 1670.5 and California Financial

8  Code section 22302(b). California Civil Code section 1670.5 states: "If the

9  court finds as a matter of law the contract or any clause of the contract to have

10  been unconscionable at the time it was made the court may refuse to enforce

11  the contract …." California Financial Code section 22302(b) states: "A loan

12  found to be unconscionable pursuant to Section 1670.5 of the Civil Code shall

13  be deemed to be in violation of this division and subject to the remedies

14  specified in this division."

15      151.  The loan contracts at issue are "unfair" under the UCL.

16  Defendants' acts and omissions violate obligations imposed by statute, are

17  substantially injurious to consumers, offend public policy, and are immoral,

18  unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs

19  any alleged benefits attributable to such conduct.

20      152.  Ms. Carpenter, Mr. Cason, and the Class members have suffered

21  an in injury in fact and lost money or property as a result of Defendants'

22  business practices.

23      153.  Pursuant to California Business and Professions Code section

24  17203, Ms. Carpenter and Mr. Cason seek an order for the benefit of the

25  general public of the State of California, (i) enjoining Defendants from making

26  loans to consumers in the State of California that are unconscionable under

27  California law; (ii) declaring the loan contracts void; (iii) requiring Defendants

28  to give individualized notice to all Class members of their rights under all

applicable laws, including laws relating to unconscionability; (iv) requiring Defendants to provide individualized notice to each such consumer of the procedures available for enforcing the consumer's rights under applicable California laws; and (v) establishing an effective monitoring mechanism to ensure Defendants' continued compliance with the terms of the injunction.

154.  Pursuant to California Business and Professions Code section 17203, Ms. Carpenter, Mr. Cason, and Class members are entitled to restitution of all amounts paid to Defendants pursuant to the loan contracts at issue.

### THIRD CAUSE OF ACTION
#### for Money Had and Received
**by Carpenter and Cason, on behalf of themselves, all persons similarly situated, and the general public, against Defendants**

155.  Defendants have received money in the form of principal and interest that is the property of Ms. Carpenter, Mr. Cason, and the Class members. In equity and good conscience, Defendants must restore that money to Ms. Carpenter, Mr. Cason, and the Class members.

### FOURTH CAUSE OF ACTION
#### for Declaratory Relief
**by Carpenter and Cason, on behalf of themselves, all persons similarly situated, and the general public, against Defendants**

156.  California and federal law allow a party to obtain a judicial declaration on rights or duties under a written contract. An actual and present controversy has arisen on the rights and duties of the respective parties under the loan contracts.

157.  Ms. Carpenter and Mr. Cason, on behalf of themselves, the general public and the Class, contend that Opportunity Financial is the true lender on the loans; that the loan agreements are governed by California law; the arbitration clause, jury waiver, class waiver, waiver of public injunction relief, prohibition of res judicata, collateral estoppel, and issue preclusion, and

WARREN
TERZIAN LLP

requirement that public injunctive relief claims be stayed are all unconscionable, void, and unenforceable; and the loan contracts are unconscionable, void, and unenforceable. On the other hand, Defendants contend that the Utah bank is the true lender on the loans at issue; that the loan agreements are governed by Utah law; and that the loan contracts and arbitration clauses are valid and enforceable.

158.   Accordingly, Ms. Carpenter, Mr. Cason, and the Class seek a judicial declaration that:

- Opportunity Financial is the true lender on the loans;

- the loans are governed by California law;

- the loan contracts are void and unenforceable against Ms. Carpenter, Mr. Cason, and the Class members;

- the loan contracts' arbitration clause is unconscionable, void, and unenforceable;

- the loan contracts' class waiver is unconscionable, void, and unenforceable;

- the loan contracts' jury waiver is unconscionable, void, and unenforceable;

- the loan contracts' waiver of the right to seek a public injunction is unconscionable, void, and unenforceable;

- the loan contracts' prohibition of res judicata, collateral estoppel, and issue preclusion is unconscionable, void, and unenforceable;

- the loan contracts' requiring that a case alleging public injunctive relief must be stayed until after an arbitration of a claim seeking individual relief is unconscionable, void, and unenforceable; and

- the loan contracts are unconscionable, void, and unenforceable.

### Fifth Cause of Action
**for Violation of 18 U.S.C. § 1962(c) (RICO Association-in-Fact Enterprise)
by Carpenter and Cason, on behalf of themselves, all persons similarly situated, and the general public, against Defendants**

159.   Opportunity Financial violated 18 U.S.C. § 1962(c).

WARREN
TERZIAN LLP

160.   *Association in-fact enterprise.* The Illegal Loans Enterprise engaged in activities that affected interstate commerce.

161.   The Illegal Loans Enterprise is an association-in-fact enterprise of corporate entities and individuals. It comprises persons associated together for a common purpose.

162.   The Illegal Loans Enterprise has an ongoing organization with an ascertainable structure and functions as continuing unit with separate roles and responsibilities.

163.   While the members of the Illegal Loans Enterprise participate in the conduct of that enterprise, they each have an existence separate and distinct from the enterprise.

164.   The following persons, and others presently unknown, have been members of and constitute an association-in-fact enterprise within the meaning of RICO, and will be referred to collectively as the Illegal Loans Enterprise:

- Opportunity Financial: the creator, director, funder, implementer, orchestrator, and operator of the rent-a-bank scheme; and

- FinWise: the bank that agreed to be rented by allowing Opportunity Financial to purportedly close loans in FinWise's name, while Opportunity Financial maintains all risk of loss and holds the predominant economic interest.

165.   Each of these entities holds uniquely distinct roles.

166.   *Operation and control of the Illegal Loans Enterprise.* At all relevant times, Opportunity Financial knowingly conducted the Illegal Loans Enterprise's affairs or knowingly participated, directly or indirectly, in the conduct of the enterprise's affairs.

167.   At all relevant times, Opportunity Financial operated, controlled, or managed the Illegal Loans Enterprise through various actions.

168.   Opportunity Financial directed, operated, and managed the affairs of the Illegal Loans Enterprise.

WARREN
TERZIAN LLP

169.  Opportunity Financial could not accomplish the enterprise's affairs on its own. To succeed in states with interest rate caps, Opportunity Financial needed to rent a bank that Opportunity Financial could claim as the purported lender on the loans.

170.  Opportunity Financial rented at least three Utah state-chartered banks, primarily FinWise. Opportunity Financial entered contracts with those banks to effect the rent-a-bank scheme and the Illegal Loans Enterprise. The Illegal Loans Enterprise and rent-a-bank scheme could not proceed without those banks.

171.  *Common purpose of the Illegal Loans Enterprise.* The common purpose of the Illegal Loans Enterprise is to enter loan transactions with the Class at interests rates of at least 75.4% (for loans issued on or after January 1, 2020, with an original principal loan amount of between $2,500 and $9,999), 60.2% (for loans of $1 and $349), 55.8% (for loans of $350 to $499), 53.6% (for loans of $500 to $999), and 49.6% (for loans of $1,000 to $2,499).

172.  *Collection of unlawful debt.* It is unlawful for a RICO enterprise to engage in the collection of an "unlawful debt." 18 U.S.C. § 1962(c).

173.  An "unlawful debt" is a debt (A) "which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury" and (B) "which was incurred in connection with … the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

174.  The loans that Opportunity Financial issued to Ms. Carpenter, Mr. Cason, and the RICO Sub-Class are unlawful debts under RICO.

175.  The loans issued to Ms. Carpenter, Mr. Cason, and the RICO Sub-Class are more than four times the amount permitted by California laws relating to usury.

WARREN
TERZIAN LLP

1   176.   The loans issued to Ms. Carpenter, Mr. Cason, and the RICO Sub-
2   Class were incurred in connection with the business of lending money at a rate
3   usurious under California law, where the usurious rate is at least twice the
4   enforceable rate.

5   177.   California law caps the interest rate on loans issued on or after
6   January 1, 2020, with an original principal loan amount of between $2,500
7   and $9,999, inclusive, at no more than 37.6% APR.

8   178.   California law caps the interest rate on loans with an original
9   principal loan amount of between $1 and $349, inclusive, at no more than
10  30%.

11  179.   California law caps the interest rate on loans with an original
12  principal loan amount of between $350 and $499, inclusive, at no more than
13  27.85%.

14  180.   California law caps the interest rate on loans with an original
15  principal loan amount of between $500 and $999, inclusive, at no more than
16  26.7%.

17  181.   California law caps the interest rate on loans with an original
18  principal loan amount of between $1,000 and $2,499, at no more than
19  24.75%.

20  182.   Opportunity Financial's loans are unenforceable under California's
21  laws relating to usury.

22  183.   Under California law, if a lender willfully charged, contracted for,
23  or received more than the maximum interest rate, the debt is unenforceable in
24  whole. The loan contract is void, and the lender lacks any right to collect or
25  receive any principal, charges, or recompense in connection with the
26  transaction. Cal. Fin. Code § 22750. Defendants willfully violated California
27  law. The same goes if the lender willfully violated the California Financial
28  Code. *Id.* § 22750(b).

184. If the violation was not willful, the debt is unenforceable in part. The lender forfeits all interest and charges on the loan and may collect or receive only the principal amount of the loan. Cal. Fin. Code §§ 22751–52.

185. A single instance of a collection of an unlawful debt violates RICO. That said, Opportunity Financial engaged in widespread misconduct and issued at least thousands of loans to the RICO Sub-Class. All of these loans are unlawful debts under RICO.

186. *Longevity*. The Illegal Loans Enterprise has a longevity sufficient to permit Opportunity Financial to pursue the enterprise's purpose. Opportunity Financial spent years, material amounts of money, and significant time and resources to develop the rent-a-bank scheme. It has been operating that scheme for at least five years.

187. *Injury*. Ms. Carpenter, Mr. Cason, and the RICO Sub-Class were injured as a direct result of Opportunity Financial's violations of 18 U.S.C. § 1962(c), by the payment of unlawful and usurious interest rates on loans made by Opportunity Financial which would not have been made but for Opportunity Financial's conduct.

188. Ms. Carpenter, Mr. Cason, and the RICO Sub-Class were also injured because they made payments repaying principal. Opportunity Financial was not entitled to the return of principal because its conduct was a willful violation of California law.

189. Opportunity Financial is liable for actual damages, treble damages, and legal fees pursuant to 18 U.S.C. § 1964(c).

### Sixth Cause of Action
#### for Violation of 18 U.S.C. § 1962(d) (RICO Conspiracy)
**by Carpenter and Cason, on behalf of themselves, all persons similarly situated, and the general public, against Defendants**

190. Ms. Carpenter and Mr. Cason re-allege and incorporate paragraphs 159–189.

WARREN TERZIAN LLP

191.  Opportunity Financial violated 18 U.S.C. § 1962(d) by conspiring to violate § 1962(c).

192.  Opportunity Financial knowingly agreed to facilitate the Illegal Loans Enterprise, which allowed the enterprise to make and collect unlawful debt at more than twice the lawful rate of interest under California usury law.

193.  This knowledge is evidenced in part by Opportunity Financial's spearheading the creation of the rent-a-bank scheme.

194.  Ms. Carpenter, Mr. Cason, and the RICO Sub-Class were injured as a direct result of Opportunity Financial's violations of 18 U.S.C. § 1962(d), by the payment of unlawful and usurious interest rates on loans made by Opportunity Financial which would not have been made but for Opportunity Financial's conduct.

195.  Ms. Carpenter, Mr. Cason, and the RICO Sub-Class were also injured because they made payments repaying principal. Opportunity Financial was not entitled to the return of principal because its conduct was a willful violation of California law.

196.  Opportunity Financial is liable for actual damages, treble damages, and legal fees pursuant to 18 U.S.C. § 1964(c).

### Seventh Cause of Action
#### for Fraudulent Concealment
**by Carpenter and Cason, on behalf of themselves, all persons similarly situated, and the general public, against Opportunity Financial**

197.  Opportunity Financial committed fraudulent concealment.

198.  Under the loan contracts, Opportunity Financial is the agent of Ms. Carpenter, Mr. Cason, and the Class. Opportunity Financial therefore owes them fiduciary duties.

199.  Opportunity Financial intentionally failed to disclose that California law caps the interest rates at no more than 36% APR plus the

WARREN
TERZIAN LLP

1  federal funds rate. Opportunity Financial also intentionally failed to disclose
2  that it buys 95% of the loans shortly after they are issued.

3       200.  Opportunity Financial disclosed certain alleged factual
4  statements—i.e., that it was purportedly just the servicer on the loan. It also
5  represented that the loans were enforceable. These representations were
6  materially false. Opportunity Financial made the misrepresentations knowing
7  they were false or alternatively made them recklessly and without regard for
8  their truth. Even if not false, the representations were deceptive because
9  Opportunity Financial failed to disclose that it buys 95% of the loans shortly
10 after they are issued, along with all other facts related to Opportunity Financial
11 being the true lender.

12      201.  Ms. Carpenter, Mr. Cason, and the Class did not know of the
13 concealed facts.

14      202.  Ms. Carpenter, Mr. Cason, and the Class, as unsophisticated
15 subprime borrowers (compared to the sophisticated financial services company
16 Opportunity Financial), could not reasonably discover the concealed facts.

17      203.  Opportunity Financial intended to deceive Ms. Carpenter, Mr.
18 Cason, and the Class by concealing the facts.

19      204.   Had the information been disclosed, Ms. Carpenter, Mr. Cason,
20 and the Class reasonably would have behaved differently. Ms. Carpenter, Mr.
21 Cason, and the Class were harmed, and Opportunity Financial's concealment
22 was a substantial factor in causing their harm.

23 **VIII. PRAYER FOR RELIEF**

24      205.  Ms. Carpenter and Mr. Cason request that the Court enter the
25 following relief against Defendants as follows:

26           •      An order certifying the Class and RICO Sub-Class;

27           •      Judgment against Defendants;

28

- Compensatory damages, including all interest payments, payments of principal, and owed interest payments, in an amount yet to be ascertained, in an exact amount that is yet to be ascertained;

- Treble and punitive damages, in an amount yet to be ascertained;

- An order declaring that: (1) Opportunity Financial is the true lender on the loans; (2) the loans are governed by California law; (3) the loan contracts are void and unenforceable against Ms. Carpenter, Mr. Cason, and the Class members; (4) the loan contracts' arbitration clause is unconscionable, void, and unenforceable; (5) the loan contracts' class waiver is unconscionable, void, and unenforceable; (6) the loan contracts' jury waiver is unconscionable, void, and unenforceable; (7) the loan contracts' waiver of the right to seek a public injunction is unconscionable, void, and unenforceable; (8) the loan contracts' prohibition of res judicata, collateral estoppel, and issue preclusion is unconscionable, void, and unenforceable; (9) the loan contracts' requiring that a case alleging public injunctive relief must be stayed until after an arbitration of a claim seeking individual relief is unconscionable, void, and unenforceable; and (10) the loan contracts are unconscionable, void, and unenforceable;

- Prejudgment interest;

- A public injunction for the benefit of the People of the State of California that (1) bars Opportunity Financial from directly or indirectly offering, providing, advertising, or acting as a service provider for any loans over the maximum interest rate; (2) requiring Defendants to give individualized notice to all Class members of their rights under all applicable laws; (3) requiring Defendants to provide individualized notice to each such consumer of the procedures available for enforcing the consumer's rights under applicable California laws; (4) voiding the loans and barring Opportunity Financial from enforcing them, and (5) establishing an effective monitoring mechanism to ensure Defendants' continued compliance with the terms of the injunction;

- Restitution of all money paid to Defendants, in an amount yet to be ascertained;

- Legal fees pursuant to 18 U.S.C. § 1964(c) and California Code of Civil Procedure § 1021.5;

- Costs; and

COMPLAINT

WARREN
TERZIAN LLP

1          • For such other relief that the Court deems just and proper.

2    Dated: December 22, 2021                    **WARREN TERZIAN LLP**

3

4                                                _____

5                                                Dan Terzian

6                                                *Counsel for Plaintiffs*
                                                 *Crystal Carpenter and Jordan Cason*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2    Plaintiffs Crystal Carpenter and Jordan Cason demand a trial by jury on

3  all claims so triable.

4

5  Dated: December 22, 2021                    **WARREN TERZIAN LLP**

6

7                                              Dan Terzian

8                                              *Counsel for Plaintiffs*

9                                              *Crystal Carpenter and Jordan Cason*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28